**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Commerce and Industry Insurance Company,<br><br>                    Plaintiff,<br><br>v.<br><br>Richard Snider,<br><br>                    Defendant. | No. CV-15-02388-PHX-DLR<br><br>**ORDER** |

The parties have filed cross-motions for judgment on the pleadings. (Docs. 18, 21.) The motions are fully briefed, and neither party requested oral argument. For the reasons stated below, Plaintiff's motion is granted and Defendant's motion is denied.

## **BACKGROUND**

The following facts are undisputed unless otherwise noted. On September 18, 2014, Plaintiff Commerce and Industry Insurance Company ("Commerce") issued Defendant Richard Snider an Aircraft Insurance Policy (the "Policy"), effective from the date of issuance to September 18, 2015. The Policy insures Snider and his 2000 Lancair Super ES single-engine aircraft from bodily injury, property damage, physical damage, and includes Medical Expense Coverage. It contains an exclusion that provides: "This insurance policy does not apply . . . [w]hen the aircraft is in flight . . . if piloted by anyone other than . . . a pilot specified in Item 5." (Doc. 18 at 4.) Item 5 requires that, "[w]hile the aircraft is in flight, it will be piloted only by the person(s) meeting the provisions of

the 'Pilots Endorsement.'" (*Id.*)  The Pilots Endorsement designated Snider as a pilot and required that he obtain a "current and valid [Federal Aviation Administration ("FAA")] Medical Certificate." (*Id.*)[1]

On September 1, 2015, while flying from El Paso, Texas to Glendale, Arizona, Snider's aircraft experienced engine failure and he was forced to make an emergency landing in Winkelman, Arizona. (Doc. 1, ¶ 11.) During the landing, the aircraft was damaged by the terrain and eventually caught fire. (*Id.*, ¶ 12.) Snider alleges the damage to the aircraft exceeds $200,000. The same day, Snider reported the accident to the FAA, which informed him that his medical certificate, which he had obtained in April 2010, had expired in April 2015. (Doc. 21 at 4.)

The next day, Snider underwent a physical and his medical certificate was reinstated. (*Id.*) Snider then submitted a claim with Commerce for physical damage to the aircraft and for minor injuries. However, Commerce denied the claim pursuant to the exclusion because it discovered Snider's medical certificate was expired at the time of the incident.

On November 23, 2015, Commerce filed the instant action seeking a declaration of no coverage under the Policy due to Snider's lack of a valid FAA medical certificate when the accident occurred. (Doc. 1.) In response, Snider filed counterclaims for breach of contract and breach of the covenant of good faith and fair dealing. (Doc. 11.) Both parties now move for judgment on the pleadings.[2]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a motion for judgment on the pleadings "is properly granted when, taking all the allegations in the non-moving party's

---

[1] FAA Second Class Medical Certificates last for 60 months. (Doc. 21 at 3.)

[2] Commerce argues Snider's cross-motion for judgment on the pleadings is deficient under Fed. R. Civ. P. 7(b)(1) because it raises the same issue as Commerce's motion and does not request specific relief. The Court agrees. Snider's response addresses Commerce's motion, but does not request that the Court grant relief on Snider's cross-claims, nor does it analyze the merits of those cross claims. As such, Snider's cross motion is denied.

pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. Cty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999). Motions for judgment on the pleadings and motions to dismiss under Rule 12(b)(6) are "functionally identical," and therefore the same standard applies. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). As with Rule 12(b)(6) motions, the Court may not consider evidence outside the pleadings without converting the motion for judgment on the pleadings into a motion for summary judgment. Fed. R. Civ. P. 12(d).

## ANALYSIS

Commerce argues that it is entitled to judgment on the pleadings because Snider did not possess a current and valid FAA medical certificate at the time of the accident, relying heavily on *Security Insurance Company of Hartford v. Andersen*, 763 P.2d 246 (Ariz. 1988), a case remarkably similar to the instant case. In *Andersen*, Security Insurance Company of Hartford ("Security") issued a comprehensive aviation insurance policy to Don Andersen on September 9, 1981. *Id.* at 247. The policy provided that "coverage afforded by this policy shall not apply while the aircraft is operated in flight by other than the following pilots: As Endorsed." *Id.* The "approved pilots endorsement" stated:

> In consideration of the premium for which this policy is written, it is understood and agreed that the coverage afforded by this Policy shall apply only while the aircraft is operated in flight by the pilot(s) designated below and then only if the said pilot(s) is properly certificated and rated by the FAA as shown below, has the minimum flying experience, all as indicated below, *and in addition holds a valid and current medical certificate of the appropriate class*[.]

*Id.* at 248 (emphasis in original). Andersen was designated as the pilot in the policy. *Id.* The policy also contained an exclusion providing that "[t]his Policy does not apply and no coverage is afforded . . . [w]hile the aircraft is in flight . . . [i]f piloted by a person not properly certificated, rated, and qualified under the current applicable Federal Air Regulations[.]" *Id.* Federal Air Regulations required that no person may pilot an aircraft unless that person has obtained a current FAA medical certificate. *Id.* (citing 14 C.F.R. §

61.3(c)).

In October 1981, Andersen and two other men were killed when Andersen's plane crashed. *Id.* It was undisputed that Andersen did not have a current medical certificate, and that his prior certificate expired on May 30, 1981. *Id.* Security denied coverage based on this fact, and brought an action seeking a declaration of no coverage. *Id.* The trial court entered summary judgment in favor of Security, and the court of appeals reversed, "holding that Security could not enforce its policy exclusion based on Andersen's failure to have a valid medical certificate, because [ ] his failure to have such a certificate was not causally related to the accident." *Id.*

The Arizona Supreme Court reversed the court of appeals and found in favor of Security. It noted that, generally, policy exclusions are to be construed against the insurer only if the policy language is ambiguous. *Id.* Where no ambiguity exists and the policy language is clear, courts "should not attempt to revise the policy to increase the risk or extend liability just to accomplish a so-called good purpose." *Id.* (internal quotation marks omitted). Therefore, because the policy clearly "provided that 'coverage . . . shall apply only while the aircraft is operated in flight by the pilot(s) designated below and then only if the pilot(s) . . . holds a valid and current medical certificate of the appropriate class,'" no coverage was afforded for the crash at issue. *Id.* at 248-49.

The result is the same here. Snider admits he did not hold a current and valid FAA medical certificate at the time of his accident. Nor does he dispute that the Policy required as much. Indeed, like the policy in *Andersen*, the Policy expressly excludes coverage if the aircraft is operated in flight by a pilot other than that listed in Item 5, which explicitly requires that the designated pilots hold a current FAA medical certificate. (Doc. 18 at 4.) The Policy language is clear, and thus no coverage is afforded for Snider's accident.[3]

---

[3] Snider argues that *Andersen* is "an aberration in the supreme court's adoption of the Corbin school of contract interpretation." (Doc. 21 at 5.) Snider also speculates that *Andersen* may have come out differently had certain justices participated in the case. (*Id.* at 9.) But the Court need not speculate—*Andersen* is still good law and has been followed as recently as six months ago by the Arizona Court of Appeals in *Kirkland v.*

- 4 -

Snider attempts to distinguish *Andersen* by arguing that after *Andersen* was decided, "the Arizona Supreme Court adopted provisions of the Restatement (Second) of Contracts which do not permit a disproportionate forfeiture of an immaterial breach and include a test for materiality not considered" by *Andersen*. (Doc. 21 at 5.) In other words, he claims his breach was not material because his "failure to maintain a current medical certificate was inadvertent and unintentional" and did not result in an increased risk for Commerce because his health was in good condition. This argument is off point.

*Andersen* turned on the nature of the risk insured, not whether the insured committed a breach of his obligations under the policy justifying a denial of coverage. Here, the Policy expressly excluded coverage if Snider did not maintain a current FAA medical certificate. Thus, the risk contacted for included the assurance that Snider's health met the minimum federal guidelines, and the failure to obtain the FAA medical certificate affected the risk assumed by Commerce. Contrary to Snider's argument, denial of coverage does not result in forfeiture because Snider never paid to insure the risk that he would fly without a certificate. In addition, Snider's claim that his physician deemed him in good health only weeks before the crash is irrelevant because Commerce did not agree in the insurance contract to rely on Snider or his physician's representations, after the fact, regarding Snider's health. The Policy sets forth a specific standard—the FAA medical certificate—which the insured is expressly required to have any time he piloted a plane.

*Andersen* also rejected Snider's argument that the required FAA medical certificate is not causally related to the loss, and therefore should be excused. It reaffirmed the notion that insurers "may lawfully exclude certain risks from the coverage of its policy, and where damage occurs during operation of the insured aircraft under circumstances as to which the policy excludes coverage, there is no coverage." *Andersen*, 763 P.2d at 249. The *Andersen* court found that no causal connection is

---

*Old United Casualty Co.*, No. 1 CA-CV 14-0427, 2015 WL 6391761 (Oct. 22, 2015). Furthermore, not one Arizona court has disagreed with or criticized its nearly thirty-year-old analysis.

required to deny coverage because the "'clear meaning of this language is not that the risk is excluded if damage to the aircraft is *caused* by failure of the pilot to be properly certificated, but that the risk is excluded if damage occurs *while* the aircraft is being flown by a pilot not properly certificated.'" *Id.* (quoting *Baker v. Ins. Co. of N. Am.*, 179 S.E.2d 892, 894 (N.C. Ct. App. 1971)). Here, as in *Andersen*, the Policy excluded the risk of Snider operating the aircraft without a valid FAA certificate, not if any damage or injury was caused because of his failure to be properly certificated.

Snider further argues *Andersen* is distinguishable from the instant case because Andersen did not have a valid FAA medical certificate when he obtained coverage. Here, however, Snider had already obtained his certificate when the coverage period commenced and his failure to maintain it was "inadvertent and unintentional." (Doc. 21 at 12.) But Snider's intent is irrelevant. His failure to renew his certificate created an uninsured risk not contemplated or bargained for by the parties.

Snider also argues that *Andersen* involved application of a condition precedent, whereas here, the Policy expresses the requirement for obtaining a FAA medical certificate as a condition subsequent. (Doc. 21 at 14.) He asserts that the Policy language is a condition subsequent because it states: "While the aircraft is in flight, it will be piloted only by [Snider], *provided that* the pilot in command has . . . a current and valid FAA medical certificate." (Doc. 21 at 14.) Indeed, *Andersen* appeared to state that its holding does not apply to a condition subsequent, noting that a causal connection to the loss is unnecessary where the exclusion is "narrow and specifically delineate[s]" what is covered, "the relevant clause [is] an *exclusion* of coverage (*as opposed to some kind of condition subsequent*)," and the exclusion in unambiguous. 763 P.2d at 249 (emphasis added).[4] Snider argues this case fits within the exception articulated in *Andersen*.

---

[4] Snider argues that A.R.S. § 20-1135 "may bear on this issue." (Doc. 21 at 15.) The statute provides that an insurer may not exclude coverage based on a condition for which the insured had previously been tested for and which had been found not to exist. § 20-1135. This statute has been applied only in cases involving denial of coverage for a preexisting medical condition under medical policies, *see Madsen v. Fortis Benefits Ins. Co.*, No. CV 04-1959-PHX-JAT, 2006 WL 3771803, at *5 (D. Ariz. Dec. 21, 2006), and is not applicable to this case.

"A condition subsequent is to be distinguished from an exclusion from the coverage: the breach of the former is to terminate or suspend the insurance while the effect of the latter is to declare that there never was insurance with respect to that excluded risk." Couch on Insurance 3d § 81:19 (2015). Conditions subsequent sometimes result in forfeiture because if the insured breaches that condition, it results denial of the benefit of the "very thing paid for[.]" *Zuckerman v. Transamerica Ins. Co.*, 650 P.2d 441, 447 (Ariz. 1982). Here, the Policy clearly states that coverage *does not apply* if the pilot fails to maintain a valid FAA medical certificate. (Doc. 18 at 4.) Unlike notice or cooperation clauses, which are unrelated to the risk insured, the provision cited by Snider clearly excludes coverage for certain risks, and therefore Snider did not pay a premium for that uninsured risk. Snider's argument is unpersuasive.[5]

Accordingly, because the Policy clearly excludes from coverage damage or injury that occurs while the aircraft is being operated by a pilot who does not have a current and valid FAA medical certificate, and because Snider admits that he did not possess such a certificate, Snider is not entitled to coverage under the Policy. Furthermore, because no coverage exists, Snider's cross-claims for breach of contract and breach of the covenant of good faith and fair dealing fail. *See Manterola v. Farmers Ins. Exch.*, 30 P.3d 639, 646 (Ariz. Ct. App. 2001) (noting that "a bad faith claim based solely on a carrier's denial of coverage will fail on the merits if a final determination of noncoverage is ultimately made").

//
//
//
//

---

[5] Snider claims that "'a clause that requires an insured to avoid an increased hazard is a condition subsequent for coverage.'" (Doc. 21 at 14 (quoting *D & S Realty, Inc. v. Markel Ins. Co.*, 789 N.W.2d 1 (Neb. 2010).) But the provision in the Policy does not require that Snider avoid *increased* hazard—the provision *defines* the hazard, and is thus "qualitatively different" than a condition subsequent. *See Andersen*, 763 P.2d at 250.

- 7 -

**IT IS ORDERED** that Commerce's motion for judgment on the pleadings, (Doc. 18), is **GRANTED**, and Snider's cross-motion for judgment on the pleadings, (Doc. 21), is **DENIED**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 27th day of April, 2016.

Douglas L. Rayes
United States District Judge

- 8 -